STATE OF NORTH CAROLINA v. ROBERT BRADSHER

No. 8015SC547

(Filed 18 November 1980)

1. **Robbery § 2– armed robbery – location where acts occurred – sufficiency of indictment**

An indictment which charged defendant with armed robbery sufficiently designated the address or location of premises where the alleged acts occurred and was otherwise sufficient to charge defendant with the named crime.

2. **Criminal Law § 91– speedy trial – method of computing delay**

There was no merit to defendant's contention that the trial court erred in denying his motion to dismiss on the ground that a speedy trial was not afforded him as required by the Speedy Trial Act, since the trial court properly excluded the period from 1 October 1979 through 5 November 1979, as defendant requested a continuance during that period, and the trial court properly excluded from the 120 day time limit eight days during which the withdrawal of counsel and appointment of new counsel took place.

3. **Robbery § 3.2; Assault and Battery § 13– rifle – proper identification – chain of custody – admissibility**

In a prosecution of defendant for common law robbery and assault with a deadly weapon inflicting serious injury, the trial court did not err in admitting into evidence a rifle purportedly taken during the crimes by defendant, since the rifle was properly identified by police officers, and a sufficient chain of custody between the time of the crime and the trial was shown.

4. **Robbery § 3.2– documents found in vehicle – admissibility**

The trial court in a common law robbery case did not err in admitting into evidence documents purportedly taken from the victim's residence and found 33 days later in an automobile used by defendant and his companions on the night of the incident in question, since the documents were properly identified by the victim as having been in his home on the night in question, and the owner of the automobile testified that he lent his car to one of defendant's companions in crime and that he put no papers in the car between the time it was returned to him and police officers discovered the documents.

5. **Robbery § 4.2– common law robbery – sufficiency of evidence**

Evidence tending to show that defendant struck his victim repeatedly in the head with a shotgun, causing the victim to be hospitalized, was enough to raise the inference, sufficient to withstand a motion to dismiss, that defendant took personal property belonging to the victim by force or putting in fear, and his conviction for common law robbery was therefore proper.

6. **Assault and Battery § 14.3– assault with deadly weapon with intent to kill inflicting serious injury – sufficiency of evidence**

Evidence tending to show that defendant struck his victim repeatedly in

State v. Bradsher

the head with a shotgun causing bleeding and hospitalization was enough to raise the inference, defeating a motion to dismiss, that defendant assaulted his victim with a deadly weapon with intent to kill inflicting serious injury.

7. **Criminal Law § 63– mental condition of assault victim – lay opinion testimony admissible**

The trial court did not err in permitting a police officer to testify concerning changes in the mental condition of the robbery and assault victim, since lay opinion is generally permitted as to the mental capacity of a witness as long as the testimony is based on observations during a period not too remote from the time during which mental capacity is in question.

8. **Criminal Law § 102.6– jury argument – district attorney's remark no grounds for mistrial**

The trial court did not err in refusing to allow a motion for mistrial after the district attorney, in his closing argument to the jury, "stated in substance that as a result of this assault [the victim] has 'scrambled eggs for brains,' " since the record did not indicate the context in which the district attorney's statement arose; it did not give any of the arguments of counsel other than the mere reference to the substance of the challenged statement; and the argument is therefore presumed to be proper.

9. **Criminal Law § 119– request for instructions – instructions given in substance**

There was no merit to defendant's contention that the trial judge erred by refusing to give instructions requested by defendant on accomplice testimony and common law robbery, since the charge did incorporate the substance of the tendered instructions.

APPEAL by defendant from *Clark, Judge*. Judgment entered 16 January 1980 in Superior Court, ALAMANCE County. Heard in the Court of Appeals on 16 October 1980.

Defendant was charged under an indictment dated 4 June 1979 with first degree burglary and armed robbery. An indictment, also dated 4 June 1979, for assault with intent to kill inflicting serious bodily injury, was captioned with defendant's name but erroneously referred to another person. This defect was cured in an indictment dated 2 July 1979.

Counsel was appointed for defendant, but on 28 August 1979 counsel moved to withdraw from the proceedings, and the court allowed the withdrawal. On 30 August 1979 new counsel was appointed for defendant. On 31 August 1979, defendant moved to continue the proceedings from the scheduled date of trial, 4 September 1979, to "the October 1, 1979 Session" on the grounds that the "attorney as appointed August 30, 1979 cannot reasonably become acquainted with the charges herein and

State v. Bradsher

prepare for trial in time for September 1979 Session." The court granted the continuance. The case was not called during the 1 October 1979 session of Alamance County Superior Court, and thereafter, on 17 October 1979, defendant made a second motion for continuance, "from the October 1, 1979 Session to the December 10, 1979 Session." On 25 October 1979, the court granted the continuance.

On 10 December 1979, defendant filed motions to dismiss on the grounds that the indictment did not comply with G.S. § 15A-924(a), and the State made a motion to continue the proceedings until 14 January 1980. That same day the court denied defendant's motion and granted the State's motion, but the court held that the period covered by the State's continuance request would not be an "exclusion of time under the Speedy Trial Act. . . ."

Defendant moved to dismiss the proceedings for failure to comply with the time limits required by G.S. § 15A-701(al) on 10 January 1980. After a hearing, the court made findings of fact and conclusions of law that after providing for the exclusions under G.S. § 15A-701(b), the time remaining between the date of the original indictments and the trial was not greater than the statutory limit of 120 days, and denied defendant's motions. Defendant made similar motions on 14 January 1980, but these also were denied.

At trial, the State's evidence tended to show as follows: Sometime around 1:00 a.m. on 21 February 1979, defendant and two companions, Gordon Devon Moore and Thomas Latta, drove up to the residence of T.K. Wilkinson in Mebane, North Carolina. Defendant walked up to the back door and knocked, and after being admitted into the house by Wilkinson, defendant struck Wilkinson several times on the head with a shotgun. Defendant then took several guns belonging to Wilkinson from a gun cabinet and left the premises. As a result of the blows from the shotgun Wilkinson "couldn't get up" and he lay on a couch until his son-in-law, Thomas Paul Williams, came to the house around 8:30 or 9:00 a.m. that morning. When discovered by Williams, Wilkinson "couldn't see out of but one eye" and he "was just black with blood down to his pocket." Blood was all over the couch, with a "big puddle" on the floor nearby. Wilkinson was hospitalized for several days.

At the close of the State's evidence, the court granted defendant's motion to dismiss the charge of first degree burglary. Defendant offered no evidence.

The jury found defendant guilty of common law robbery and assault with a deadly weapon inflicting serious injury, and the court sentenced defendant to a prison term of "ten (10) years minimum and maximum" on the assault conviction, and to a prison term of "ten (10) years maximum and minimum" on the robbery conviction, the latter sentence to begin at the expiration of the former. Defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Henry T. Rosser, for the State.*

*Paul H. Ridge, for the defendant appellant.*

HEDRICK, Judge.

[1] Defendant first assigns error to the court's denial of defendant's motion to dismiss based upon the failure of the bill of indictment properly to charge the offense of armed robbery. Specifically, defendant argues that the indictment did not sufficiently "designate the address or location of premises where alleged acts referred to occurred." We do not agree. The indictment plainly states that personal property "of the said T.K. Wilkinson" was taken "from the presence, and residence of T.K. Wilkinson, 308 North Third Street, Mebane, N.C." Furthermore, we have carefully examined the bill of indictment and find it to be in sufficient compliance with the requirements of G.S. §§ 15A-644, 15A-924(a). This assignment of error is without merit.

[2] Defendant contends by his second assignment of error that the court erred in denying defendant's motion to dismiss on the grounds that a speedy trial was not afforded to defendant as required by the Speedy Trial Act, G.S. § 15A-701 *et seq.* Defendant argues that the court committed prejudicial error in excluding the period from 1 October 1979 through 5 November 1979, despite the motion for continuance made on 17 October 1979, on the grounds that the request to continue from "the October 1, 1979 Session" was "an inadvertent mistake by Counsel as evidenced by the fact that Assistant District Attorney did not correspond with Defendant's attorney concerning setting

the cases for trial until October 16, 1979 ... ." Defendant has cited no authority for this argument, and we see no reason why he should not be bound by his own request for a continuance. The 17 October 1979 request for continuance was in clear, unmistakable language, the trial judge properly followed the dictates of the Speedy Trial Act in granting the continuance, and defendant was given exactly what he requested.

Alternatively, defendant contends the court erred in excluding from the 120 day time limit the period from 28 August 1979 to 4 September 1979. This contention has no merit since the court specifically found, based on G.S. § 15A-701(b)(1), that this period was "a period of delay resulting from other proceedings concerning the defendant, to wit: the withdrawal of counsel and the appointment of new counsel." G.S. § 15A-701(b)(1) in pertinent part provides:

> (b) The following periods shall be excluded in computing the time within which the trial of a criminal offense must begin:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant including, but not limited to, delays resulting from ...
>
> > d. Hearings on pre-trial motions or the granting or denial of such motions; ...

Clearly, the finding by the trial judge is supported by the record in this case, which shows that the first counsel appointed for defendant withdrew on 28 August 1979, that the court appointed new counsel on 30 August 1979, and that the first action by new counsel was to move for a continuance in order to get familiar with the case. Moreover, the finding seems to us proper under the statute. *Compare, State v. Rogers*, 49 N.C. App. 337, 271 S.E. 2d 535 (1980). This assignment of error is without merit.

[3] Defendant next contends, based upon his fourth assignment of error, that the court erred in admitting into evidence over defendant's objection State's Exhibit #1, a rifle that was purportedly taken from the Wilkinson residence by defendant. Objects such as the rifle marked as State's Exhibit #1 that are offered at trial as being the particular item that was involved in

the incident at issue are "real evidence," and such an object must be identified as the same object involved in the incident at issue, and it must be shown that the object has not undergone any material change in condition, before the object can be admitted into evidence. *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979); *State v. Harbison*, 293 N.C. 474, 238 S.E. 2d 449 (1977). Defendant argues that State's Exhibit #1 did not meet this test of admissibility because the exhibit was not sufficiently identified as being the rifle described in the bill of indictment, and because of the lack of an "appropriate and reliable chain of custody" between the time of the incident at issue and the trial. We disagree. The indictment for armed robbery charged that defendant "did then and there unlawfully, wilfully, forcibly, violently, and feloniously take, steal, and carry away a .35 Remington Lever Action Rifle; ..." State's Exhibit #1 was described by Officer H.S. Lineberry as being a "Remington gun" and though Lineberry was not sure of the exact caliber, he believed it "to be a thirty-five caliber." Captain Thomas J. Long of the Alamance County Sheriff's Department testified that sometime around 19 March 1979, Lineberry had shown him "a lever action thirty-five Remington rifle with a serial number 27058047" that other officers suspected was taken by defendant from the Wilkinson residence, and further testified that:

> I recognize what's marked for identification as State's Exhibit 1 that you show me. I saw that in my office following the 18th or 19th of March. It does have a serial number on it. The serial number on the tag on the receiver of the rifle is 27058047.

With respect to the "chain of custody," the record tends to show that Thomas Latta, one of defendant's companions when defendant went to the Wilkinson residence, was given the rifle identified as State's Exhibit #1 by defendant just after the robbery took place; that Latta took the rifle home; that Latta's mother took the rifle from the home and gave it to Jerry Warren; that Warren then gave the rifle to Officer Ronald R. Porter, who kept it until it was given to Officer Lineberry; and that Lineberry stored the rifle at the City-County Vice Unit until delivery by Lineberry and Captain Long to Chief Tate, who kept the rifle in his custody until the trial.

Moreover, the record contains ample evidence that the exhibit was the rifle taken from the Wilkinson residence by defendant. T.K. Wilkinson testified that the exhibit "looks like" one of the guns taken from his home, and Thomas Paul Williams testified as to a "sticker" he knew to be on the rifle and which he pointed out on the exhibit. In addition, Thomas Latta testified: "The kind of rifle I say I got out of that night of going to Mr. Wilkinson's is the one I just seen a while ago." In our view, State's Exhibit #1 was properly admitted into evidence, and this assignment of error is meritless.

[4] Defendant raises a similar question with respect to his third assignment of error. Defendant contends that the court erred in admitting into evidence over defendant's objection documents purportedly taken from the Wilkinson residence and later found in an automobile used by defendant and his companions on the night of the incident in question. Defendant argues that the documents were not properly identified as being related to the incident in question and that because the documents were not discovered until 33 days after the night in question, the documents were found too remote in time to be relevant. We cannot agree. T.K. Wilkinson testified as to what the documents were, and that they were in his residence on the night in question. The owner of the automobile, Freddy McAdoo, testified that he lent his car to Gordon Devon Moore sometime before 1:00 a.m. on 21 February 1979, and Moore testified that the car was used to take defendant, Moore, and Thomas Latta to and from the Wilkinson residence that night. McAdoo further testified that he did not put any papers into the automobile between the time Moore returned it to him and the time the documents were discovered by the police. In reference to the length of time between the incident and the discovery of the documents by the police, we do not consider 33 days sufficient to render the discovery too remote in time under the circumstances. This assignment of error is without merit.

[5,6] By his fifth and sixth assignment of error, defendant contends the court erred in denying defendant's motion to dismiss the charges of armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury. Since defendant was convicted of common law robbery, a lesser included offense of armed robbery, we see no necessity to discuss

whether the evidence was sufficient to withstand a motion to dismiss on the armed robbery charge, but defendant also argues that "there was not sufficient evidence other than a surmise, suspicion or conjecture as to the element of a taking by force or putting in fear as to the lesser included offense of common law robbery." This contention is meritless. Obviously, the evidence tending to show that defendant struck Wilkinson repeatedly in the head with a shotgun, causing Wilkinson to be hospitalized, is enough to raise the inference, sufficient to withstand a motion to dismiss, that defendant took personal property belonging to Wilkinson "by force or putting in fear." Similarly, with respect to the assault charge, the evidence tending to show that defendant struck Wilkinson as heretofore described, causing bleeding and hospitalization, is enough to raise the inference, defeating a motion to dismiss, that defendant assaulted Wilkinson with a deadly weapon with intent to kill inflicting serious injury. These assignments of error are without merit.

[7] Based on his seventh assignment of error, defendant makes two arguments. First, he contends the court erred in allowing testimony over defendant's objection by Chief Tate as to changes in the mental condition of the victim T.K. Wilkinson. We disagree. Lay opinion is generally permitted as to the mental capacity of a witness, as long as the testimony is based on observations during a period not too remote from the time during which mental capacity is in question. *State v. Finch*, 293 N.C. 132, 235 S.E. 2d 819 (1977); *State v. Hedrick*, 289 N.C. 232, 221 S.E. 2d 350 (1976). In the present case, Chief Tate was merely testifying from his personal observations of Wilkinson's mental state over a considerable period of time. Tate testified that he had known Wilkinson for thirty years prior to 21 February 1979, that he had seen Wilkinson within a week or two of that date, and that he had talked with Wilkinson "on at least three or four, five occasions" since that date. Tate's observations were obviously within a period "not too remote" from the date of the incident, and his testimony as to Wilkinson's mental state was properly admitted.

[8] Second, defendant contends that the court erred in refusing to allow a motion for mistrial after the District Attorney, in his closing argument to the jury, "stated in substance that as a

result of this assault Mr. Wilkinson has 'scrambled eggs for brains.' " We do not agree. Generally, the attorneys on both sides are given wide latitude in their arguments to the jury, *State v. Hunter*, 297 N.C. 272, 254 S.E. 2d 521 (1979); *State v. McCall*, 289 N.C. 512, 223 S.E. 2d 303, *vacated in part*, 429 U.S. 912, 50 L.Ed. 2d 278, 97 S.Ct. 301 (1976) and the trial judge's rulings thereon will not be disturbed absent a gross abuse of discretion. *State v. Lang*, 46 N.C. App. 138, 264 S.E. 2d 821 (1980); *State v. Hoskins*, 36 N.C. App. 92, 242 S.E. 2d 900, *disc. review denied*, 295 N.C. 469, 246 S.E. 2d 11 (1978). Moreover, when a portion of the argument of either counsel is omitted from the record on appeal, the arguments must be presumed proper. *State v. Hunt*, 37 N.C. App. 315, 246 S.E. 2d 159, *disc. review denied*, 295 N.C. 736, 248 S.E. 2d 865 (1978); *State v. Hoskins, supra*. In the present case, although the statement of the District Attorney may not have been well-advised, the record gives no indication as to the context in which the District Attorney's statement arose, nor does it give any of the arguments of counsel other than the mere reference to the "substance" of the challenged statement. The argument of the District Attorney to the jury must, therefore, be presumed proper, as must the trial judge's ruling on defendant's motion for mistrial. Defendant's seventh assignment of error is without merit.

[9] Defendant's eighth and ninth assignments of error relate to the instructions to the jury. Defendant contends the trial judge committed prejudicial error by refusing to give instructions requested by defendant on accomplice testimony and common law robbery. We cannot agree. It is the duty of the trial judge in instructing the jury to declare and explain the law arising on the evidence in the case. G.S. § 15A-1232; *State v. Leslie*, 42 N.C. App. 81, 255 S.E. 2d 635 (1979). The court is not required to give a requested instruction in the exact language of the request, and when the request is correct in itself and supported by the evidence in the case, it suffices if the requested instruction is given in substance. *State v. Sledge*, 297 N.C. 227, 254 S.E. 2d 579 (1979); *State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978).

In the present case, defendant excepted to certain portions of the trial judge's charge to the jury as not properly incorporating his requested instructions on accomplice testimony and

common law robbery. Other portions of the charge, however, when read together with the challenged portions, do incorporate the substance of the tendered instructions in our view, and since we must view the charge to the jury contextually as a whole, *State v. Rogers*, 299 N.C. 597, 264 S.E. 2d 89 (1980); *State v. Alston*, 38 N.C. App. 219, 247 S.E. 2d 726 (1978), *cert. denied*, 296 N.C. 586, 254 S.E. 2d 30 (1979), we find no error in the court's failure to give the exact wording of defendant's requests.

We hold defendant received a fair trial free from prejudicial error.

No error.

Chief Judge MORRIS and Judge MARTIN (Robert M.) concur.